**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** | **PLAINTIFF** |
| v.        Case No. 4:08-CV-3127 BSM | |
| **ROCK TENN COMPANY** | **DEFENDANT** |

## ORDER

Defendant Rock Tenn Company ("Rock Tenn") moves [Doc. No. 19] for summary judgment. The Equal Employment Opportunity Commission ("EEOC") objects [Doc. No. 30], and Rock Tenn has replied [Doc. No. 35]. For the reasons set forth below, the motion for summary judgment is denied.

## I. FACTUAL BACKGROUND

The EEOC filed this lawsuit on behalf of Cynthia Brown and a class of female employees at Rock Tenn's plant in Conway, Arkansas. The complaint alleges sexual harassment and constructive discharge based on a hostile work environment. Because Rock Tenn moved for summary judgment, the facts are described in the light most favorable to the EEOC.

Most of the EEOC's allegations are directly linked to the conduct of one person, Steve Birch, a male employee at Rock Tenn's Conway, Arkansas plant. Each of the five women whom the EEOC specifically identifies as victims of harassment, suffered that harassment at the hands of Birch. Although the EEOC makes some general allegations that men in the plant regularly referred to women as "bitches and whores" or made sexual comments about

their breasts and bottoms, most of the allegations are specifically about Birch's conduct. Birch made sexual remarks to all women involved and touched at least some of them inappropriately.

The EEOC alleges that Birch harassed Cynthia Brown almost daily from January or February 2007 to September 2007. The harassment began with Birch rubbing Brown's ears and side, placing his hands on her lower back, and grabbing her stomach. As time went on, his actions increased in both frequency and severity. Brown Dep. 7:19–25; 9:11–21. Birch would confront Brown when she was alone and touch her stomach or other "lower places." *Id.* 10:19–25. On at least one occasion he used a scanner to "scan" her breasts and groin areas. *Id.* When she told him to stop, Birch responded, "But I like it." When Brown replied, "But I don't," he stopped using the scanner. Terry Dep. 32:9–15. On another occasion, Birch touched Brown's breasts with a pen as he removed it from her pocket. Brown Dep. 34:6–13.

As Birch's conduct got worse, Brown asked him to stop and started trying to avoid him. *Id.* 7:23–8:4; 11:3–8. Eventually, Brown reported Birch's conduct to the plant supervisor, Steven Broyles. By this time, Brown's co-workers were getting into trouble because they were keeping an eye out for Birch to alert Brown when he was around, and Brown herself was getting into trouble because she was asking her co-workers to complete her work so that she would not have to be near Birch. *Id.* 11:3–5; Garrett Dep. 28:19–29:15; Terry Dep. 32:18–33:11.

The second woman that the EEOC specifically alleges Birch harassed is Cynthia

Newport. Birch harassed her for approximately three months. Newport Dep. 22:23–23:14. During the time they worked together, he constantly asked her about her breast size and whether or not her breasts were real. *Id.* On one occasion, when she bent over, Birch commented, "man, you could bounce a ball off that butt." Later Birch started commenting on her sex life, but stopped once he found out that Newport was telling her boyfriend about the things he said. *Id.* 24:5–13.

The third woman that the EEOC specifically alleges Birch harassed is Yvonne Dorris. Birch harassed her whenever she worked overtime, which was from as little as one day every two weeks to as much as two times per week, over a period of four years. Dorris Dep. 9:1–11:2. He would frequently lick his finger and stick it in her ear, or touch her breast with a pen when grabbing pens out of her pocket. *Id*. He engaged in this conduct on at least twelve occasions. *Id.* 22:18–23:13.

The fourth woman that the EEOC specifically alleges Birch harassed is Sherry Hearst. Every time Hearst came to the warehouse, Birch would ask her to lift up her shirt. Hearst Dep. 7:7–9:16. He sometimes offered her money to show him her breasts. As with the other defendants, Birch would also lick his finger and put it in Hearst's ear. On one occasion, Hearst bumped her breast on a door facing, and in front of the supervisor, Paul Broyles, Birch offered her $5.00 to rub it. *Id*. Broyles laughed. *Id.*

The fifth woman that the EEOC specifically alleges Birch harassed is Beatrice Wiley. Birch harassed her on and off for several years. Wiley Dep. 11:13–16. Birch would ask Wiley

to take pictures of her breasts two or three times a day when they worked on the same shift, and they worked on the same shift often. *Id.* Again, as with the other women, Birch would lick his finger and stick it in Wiley's ear. *Id.* Wiley reported Birch's conduct to the police in mid-September, 2007 because Rock Tenn failed to take action, . *Id.* 15:3–19:11. Birch was found guilty and fined.

On September 5, 2007, Brown reported Birch's conduct to shift supervisor Broyles. She told Broyles that Birch had been inappropriately touching her. In response, Broyles told Brown that Birch had the same problem with other employees. Brown Dep. 9:22–10:13. He also told Brown that if he said anything to Birch, it would slow down production. *Id.* 32:4–14. He never specifically questioned Brown about the particular conduct involved. *Id.*

Believing that Broyles would take no action on her complaint, Brown reported the harassment to the union steward, Steve Eoff. *Id.* 32:12–33:10. Later that day, Eoff asked Brown if anything had been done. When she said no, he reported to human resources manager Shawn Freyaldenhoven that there were sexual harassment problems that had been reported to a supervisor, but the supervisor was taking no action.

Freyaldenhoven investigated the matter by interviewing Brown, Broyles, Birch, and a list of witnesses. During this investigation, Freyaldenhoven discovered that Birch had been reprimanded for sexual harassment in 1995. At the conclusion of the investigation, a decision was made to issue Birch a written reprimand. The reprimand stated that any further occurrences would result in termination. At this point, Freyaldenhoven considered the

investigation over.

On September 10, 2007, a group of ten or eleven women went to general manager Mark Russell's office and expressed their concerns that sexual harassment by Birch had been going on for a long time. Wiley Dep. 25:1–27:1. At this meeting, Dorris expressed her concerns that other men in the plant were now claiming they could do or say whatever they wanted because Rock Tenn did nothing to Birch. Dorris Dep. 29:1–32:3. The women also told Russell about specific instances of Birch's conduct. This meeting included other women, who are not currently parties to this lawsuit, who had been sexually harassed by Birch for several years.

On September 12, 2007, Russell decided to move Birch from shift A to shift B but the move did not take place until early October. Meanwhile, Freyaldenhoven met with Wiley and Dorris on September 19, 2007, and they complained about sexual harassment that had occurred *after* Birch's September 7, 2007, reprimand. EEOC Ex. 19. This conduct included Birch flapping his shirt over his groin and making sexual comments to Wiley. Wiley Dep. 18:4–7. Freyaldenhoven took no further remedial actions after this meeting.

Further, Birch's shift change did not solve anything because a number of the women who complained of his harassment during the September 10 meeting were also assigned to shift B and were now being placed in the direct line of fire. Russell acknowledged that this was a concern but failed to take action to avoid it. Indeed, moving Birch to shift B was the only action taken by Rock Tenn against Birch after the additional women came forward.

The EEOC alleges that Birch continued to subject Brown to what she felt was harassing conduct after his September 7, 2007, reprimand. This conduct included taking breaks when she took breaks, standing outside the bathroom when she was in the bathroom, parking his car beside hers and sitting in it when she would go outside to her car to take breaks, and smirking at her. Brown claims that the conduct occurred on a weekly basis.

The EEOC claims that Brown suffered depression as a result of Birch's continued harassment, and took a leave of absence to deal with it. When her leave of absence expired, she took additional unpaid leave by telling Rock Tenn that she was having complications due to a pregnancy, although she was not pregnant. In May 2008, Rock Tenn let Brown know that she could take no more leave unless she actually was pregnant. Brown claims she could not return to work because of her depression and fear of confronting Birch. When she did not return to work, she was terminated for abandonment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if, after viewing the evidence in the light most favorable to the EEOC, no genuine issues of material fact exist and defendant is entitled to judgment as a matter of law. *Nelson v. Corr. Med. Servs.,* 533 F.3d 958, 961 (8th Cir. 2008). The EEOC cannot survive the motion for summary judgment merely by pointing to disputed facts; the facts in dispute must be material to the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1985). If the facts alleged by the EEOC, when viewed in the light most favorable to its case, would not allow a reasonable jury to find in its favor,

then summary judgment should be granted in favor of defendants. *Bloom v. Metro Heart Group of St. Louis, Inc.*, 440 F.3d 1025, 1029 (8th Cir. 2006).

## III. DISCUSSION

The EEOC alleges hostile work environment and constructive discharge and Rock Tenn moves for summary judgment on both claims. After reviewing the factual allegations and supporting evidence, the motion for summary judgment is denied.

A.   Hostile Work Environment

To establish a prima facie case of hostile work environment under Title VII, the EEOC must show: (1) that the women are members of a protected class; (2) that they were subjected to unwelcome sexual harassment; (3) that the harassment was based on their sex; and (4) that the harassment affected a term or condition of their employment. *Duncan v Gen. Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002). If the EEOC establishes its prima facie case, Rock Tenn itself will only be liable for Birch's conduct if it knew or should have known about the conduct and failed to take immediate and appropriate corrective action. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 760 (1998).

*1. Member of a protected class*

All the class members are women and members of a protected group. The EEOC has established this element of the prima facie case.

*2. Subjected to unwelcome sexual harassment*

The facts as presented by EEOC show that each of the women harassed by Birch did

not welcome or appreciate his conduct. Brown went out of her way to avoid contact with Birch, even asking her co-workers to help her avoid him. Pl.'s Br. 14. Newport told Birch that she thought his comments were inappropriate on a number of occasions. *Id.* at 14–15. Dorris typically tried to walk away from Birch when he harassed her. *Id.* at 15. Hearst consistently told Birch to leave her alone or go away when he harassed her. *Id.* Wiley also told Birch to leave her alone. *Id.* at 15–16.

Rock Tenn also argues that most of the women simply found Birch's conduct to be "silly," and failed to promptly report him. This argument ignores the simple fact that, as time went on and Birch's conduct became more pervasive, the women all felt the need to approach managers or supervisors. Simply because conduct only becomes harassing when taken over the long term does not make it welcome. Indeed, the basis of a hostile work environment claim is that conduct is severe or pervasive. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). Harassment only becomes pervasive over time, and actions that may appear silly at first can quickly develop into something much more pernicious when repeated over and over.

Rock Tenn also attempts to raise the inference that Wiley welcomed Birch's conduct by pointing to other instances where Wiley made sexual comments or flirted with other male employees. Def. Summ. J. Br. 14. This argument is unpersuasive. Simply because Wiley welcomed flirtation with other male employees on other occasions does not mean that she would welcomed sexual touching or solicitation from Birch.

The EEOC has presented triable issues of fact that the women were subjected to unwelcome sexual harassment.

### 3. *The harassment was based on sex*

Rock Tenn argues that Birch's harassment was not based on sex but on the fact that he was simply a "touchy-feely type of person." Def. Summ. J. Br. 28–29. Rock Tenn points to testimony by male employees that Birch would touch them as well. *Id.* None of this testimony, however, describes Birch touching male employees in their "lower regions" or any place comparable to a woman's breasts. It also never describes instances where Birch licked his finger and stuck it in a male employees ear. Rock Tenn also never points to any testimony from male employees that Birch solicited them for shirtless photographs, commented sexually on their bodies, asked them about their sex lives, or offered them money to take off their shirts. Although Birch may have been a "touchy-feely" person, the evidence presented by the EEOC, when taken as true, shows that he was "touchy-feely" in a materially different way with the women than he was with men. The evidence also shows that with women, Birch accompanied physical contact with verbal abuse. As such, the EEOC has presented triable issues of fact that Birch's conduct was based on sex.

### 4. *Affected a term or condition of employment*

Not all workplace conduct that can be characterized as harassment affects a term or condition of employment within the meaning of Title VII. *Meritor*, 477 U.S. at 67. Title VII is not a general code of civility that prohibits all verbal or physical harassment in the

workplace, even of an explicitly sexual nature. *Anderson v. Family Dollar Stores of Ark., Inc.*, 579 F.3d 858, 862–63 (8th Cir. 2009). The key question is whether the conduct sufficiently severe or pervasive. *Meritor,* 477 U.S. at 67. The factors to consider when determining if the alleged harassment affects the terms and conditions include its frequency, its severity, whether it is physically threatening, and whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Additionally, the work environment must have been both objectively and subjectively offensive. *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 759 (8th Cir. 2004). An objectively offensive work environment is one that a reasonable person would find hostile and abusive upon examining all the surrounding circumstances. *Anderson*, 579 F.3d at 862.

The EEOC has presented evidence to create triable issues of fact about whether each of the women found the work environment subjectively hostile. Most of the women directly told Birch to stop. All of the women eventually reported him to a supervisor. Brown went out of her way to avoid Birch, even to the detriment of her work performance. Wiley found Birch's conduct so offensive that she eventually reported him to the police. All of this evidence creates triable issues of material fact.

Rock Tenn attempts to raise the inference that Wiley could not have found Birch's conduct subjectively offensive by pointing to other instances where Wiley made sexual comments or flirted with other male employees. Def. Summ. J. Br. 14. Again, this argument is unpersuasive. Simply because Wiley flirted with some male employees on some occasions

does not mean that she could not be offended by uninvited physical contact and solicitations from Birch. There is nothing in the record to show that Wiley approved or reciprocated Birch's harassment, and nothing in the record shows that she ever flirted with Birch or gave him reason to believe that she would invite his conduct. Indeed, the evidence shows exactly the opposite. Not only did she tell Birch to stop, she also reported him to her supervisors and then eventually to the police.

Rock Tenn argues that even if the women found Birch's conduct to be subjectively offensive, the conduct is still not severe or pervasive enough to meet the high standards of an objectively hostile work environment. Def.'s Summ. J. Br. 36. Rock Tenn points to a number of cases, which it claims involve more egregious conduct, where courts have granted summary judgment. *See Lindsey v. Cube Corp.*, 386 F. Supp. 2d 1037, 1040–41 (W.D. Ark. 2005); *Legrand v. Area Resources for Community and Human Services*, 394 F.3d 1098 (8th Cir. 2005); *Tuggle v. Mangan*, 348 F.3d 714 (8th Cir. 2003); *Duncan v. GMC Corp.*, 300 F.3d 928, 934 (8th Cir. 2002). Rock Tenn's argument, however, hinges on the fact that the allegations in this case are less overtly sexual and offensive. Def. Summ. J. Br. 33. This ignores the pervasiveness of Birch's conduct.

The women who made these allegations against Birch almost uniformly allege that Birch harassed them whenever he saw them. With a few exceptions, the allegations do not point to discreet and isolated instances of sexual harassment. The conduct alleged is rather a pattern of frequent and inappropriate touching, sexual remarks, and sexual solicitations. It

is not the severity of Birch's conduct that is striking but its pervasiveness. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (A plaintiff must demonstrate that either a single incident was extraordinarily severe or that a series of incidents were "sufficiently continuous and concerted" to alter the conditions of employment.)[1]

Brown alleges that Birch harassed her almost daily for seven months. This harassment included Birch physically touching Brown's breasts and "lower parts." Newport alleges that for the three months she worked with Birch, he constantly asked her about her breast size. Dorris alleges that Birch harassed her every time they worked together. This harassment included Birch physically touching Dorris's breasts. Hearst alleges that Birch made sexual comments to her every time she came to the warehouse. Wiley alleges that Birch's harassment continued for years. Based on the allegations, it appears the complaining women could almost be assured that when they saw Birch, they would be subjected to some sort of harassment. This is exactly the sort of constancy of behavior that alters the conditions of employment. The clearest evidence of this alteration is the way that Brown became so concerned about avoiding contact with Birch that she failed to perform her own job.

Even when Birch was not being directly sexual, his less overtly sexual touching, particularly his habit of licking his finger and sticking it into a woman's ear, contributed to the pervasiveness of his conduct. Sexual harassment encompasses more than conduct with

---

[1] The question of what is beyond the bounds of decent behavior must be reconsidered. For any employee, whether male or female, to feel up a disapproving co-worker in the workplace should be considered beyond the bound of decent and utterly outrageous.

clearly sexual overtones. Any harassment or other unequal treatment that would not have occurred but for the sex of the employee, if sufficiently pervasive and patterned, can constitute an illegal condition of employment under Title VII. *Hall v. Gus Constr. Co.*, 842 F.2d 1010, 1014 (8th Cir. 1998).

It is also important to consider Birch's non-sexual contact in the greater context of his sexual contact. Non-sexual contact can take on a whole new meaning when it is accompanied by constant sexual harassment. Conduct that may be merely irritating in isolation can become incredibly demeaning when it is part of a larger pattern of sexual and physical harassment. This pattern is exactly what the EEOC alleges, and these allegations create triable issues of fact that preclude summary judgment.

### 5. *Actual or constructive notice*

After Eoff reported Birch's conduct to Freyaldenhoven and after the group of ten or eleven women confronted Russell, Rock Tenn had actual notice of Birch's conduct. The parties debate whether constructive notice existed prior to Eoff's report to Freyaldenhoven, but given the subsequent handling of the complaints, there is no need to decide this issue on summary judgment.

### 6. *Appropriate corrective action*

Once Freyaldenhoven discovered Brown's allegations against the Birch, he immediately conducted an investigation, and subsequently issued a reprimand against Birch. The reprimand indicated that Birch would be fired if he continued to harass women. The

most significant immediate action an employer can take in response to sexual harassment allegations is to undertake and immediate investigation to determine whether or not the complaint is justified. *Swenson v. Potter*, 271 F.3d 1184, 1197–98 (9th Cir. 2001). Rock Tenn undisputably undertook a prompt investigation of Brown's allegations and issued an immediate corrective response.

The problem is that Wiley and Dorris both complained to Freyaldenhoven that Birch had harassed them again after his September 7, 2007, warning. The record does not indicate that Freyaldenhoven took any steps to investigate or substantiate these claims. Accordingly, there are triable issues of fact about whether, in light of its failure to investigate complaints of subsequent sexual harassment, Rock Tenn took steps that were reasonably calculated to prevent sexual harassment.

Rock Tenn claims that it takes sexual harassment very seriously and provides examples of the different steps it has taken to curb sexual harassment in the workplace. Def. Reply Br. 32–33. These policies do appear targeted at reducing sexual harassment, but the question for the jury is whether Rock Tenn appropriately respond to *Birch's* actions. Freyaldenhoven's alleged failure to investigate or respond to allegations of continued sexual harassment creates triable issues of fact on that question.

B.  <u>Constructive Discharge</u>

Rock Tenn's motion for summary judgment on the EEOC's claim that Cynthia Brown was constructively discharged is also denied. To prove constructive discharge, the EEOC

must demonstrate that Rock Tenn deliberately made or allowed Brown's working conditions to become so intolerable that she had no other choice but to resign or at least that Rock Tenn should have reasonably foreseen resignation as a consequence of the unlawful working conditions. *Campos v. City of Blue Springs*, 289 F.3d 546, 550–51 (8th Cir. 2002). She must also show that a reasonable person, from an objective point of view, would find the working conditions intolerable. *Id.*

The EEOC alleges that after Birch's initial reprimand, he continued to harass Brown. This harassment included taking the same breaks as her, standing outside the bathroom when she was there, parking his car beside hers and sitting in it when she would go outside to her car to take breaks, and smirking at her. Brown claims that the conduct occurred on a weekly basis. This harassment, although less severe than the conduct that is alleged to have occurred before Birch's reprimand, cannot be viewed in a vacuum. It must be viewed in light of all of Birch's other actions. Although this is a somewhat close call, there is a factual dispute as to whether Rock Tenn objectively created intolerable working conditions which caused Brown to leave her employment. For this reason, there are triable issues for the jury to decide and Rock Tenn's motion for summary judgment on the constructive discharge claim is denied.

## IV. CONCLUSION

For the reasons set forth above, Rock Tenn's motion for summary judgment is DENIED.

IT IS SO ORDERED this 31st day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE